IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-CR-364 |
| | ) | |
| BENJAMIN FINKHOUSEN, | ) | The Honorable Leonie M. Brinkema |
| | ) | |
| Defendant. | ) | Hearing Date: February 1, 2019 |

## BRIEF OF THE UNITED STATES IN OPPOSITION TO THE DEFENDANT'S APPEAL OF A CRIMINAL JUDGMENT

On September 25, 2018, following a bench trial before the Honorable John F. Anderson, Benjamin Finkhousen (the defendant) was convicted of driving while intoxicated, in violation of 36 C.F.R. 4.23(a). It was the defendant's fourth drunk driving conviction. The defendant is thirty-six years old. On November 20, 2018, the defendant was sentenced to three years supervised probation with the condition that he serve a period of thirty days incarceration (intermittently), refrain from the use of alcohol, undergo alcohol, mental health and substance abuse monitoring and pay a fine of $300.

On November 29, 2018, pursuant to Federal Rule of Criminal Procedure 58(g)(2), the defendant appealed his conviction on three grounds. Defendant argues that (1) the arresting officer lacked probable cause to administer a breathalyzer test on the defendant; (2) the trial Court erred in allowing the arresting officer to testify that, according to the National Crime Information Center (NCIC) database, the damaged vehicle encountered on the side of the GW Parkway was registered to the defendant; and (3) there was insufficient evidence to uphold a Driving While Intoxicated verdict because the defendant was found hiding in a tree line a thousand feet away from the

1

disabled vehicle and because it is theoretically possible that the defendant could have become intoxicated after departing the vehicle.

The defendant has not provided meritorious grounds for his appeal, and as such, the United States respectfully requests that this Court affirm the judgment of conviction. *First,* the defendant had just been found in close proximity to a damaged and disabled vehicle registered in his name and had the keys to the same make and model car in his pocket. He smelled of alcohol, failed field sobriety tests, had an outstanding warrant relating to a previous drunk driving conviction and gave an absurd answer when asked to explain what he was doing alone in a closed, empty park at 3:00am. Considering the totality of the circumstances, there was ample probable cause to perform a breathalyzer test.

*Second,* the Court did not commit clear error in permitting testimony as to the NCIC report. The Fourth Circuit has recognized the importance and reliability of such reports and has repeatedly upheld their use, absent a showing by defendant that the report at issue was unreliable or inaccurate. The defendant was provided the report in discovery and never challenged its accuracy or reliability or introduced any conflicting evidence as to registration.

*Third,* the question for a court reviewing a conviction on appeal is whether there was sufficient evidence to support the verdict rendered at trial. Neither juries, nor judges sitting as finders of fact, are prohibited from making common-sense inferences based on circumstantial and direct evidence and the defendant chose not to introduce any evidence, much less conflicting evidence. There was more than sufficient evidence to support a conclusion that the defendant had, in fact, operated or been in control of the vehicle while intoxicated notwithstanding the fact that the vehicle had been vacated as the police approached and the police did not actually see the defendant

in the vehicle. The defendant's blood alcohol content registered at .13 approximately an hour after the vehicle had been sighted, well above the .08 limit established under the applicable federal regulation.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At approximately 3:00am on Sunday, July 8, 2018, United States Park Police Officer Szulwach was traveling northbound on the George Washington Memorial Parkway when he observed a stationary Honda Civic on the southbound ramp to Turkey Run Park. Trial Transcript (TT) at 7:21-8. When he first sighted the vehicle, both the hazard and headlights were on, the driver's side front tire was flat, and there was paint damage consistent with that of a car crash. TT at 11:6-12, 9:14-24. Officer Szulwach proceeded to make a U-turn a few hundred yards up the road and immediately returned to the vehicle. TT at 9:25-10:5; 34:25-35:5. By the time Officer Szulwach returned to the vehicle—a period of a few minutes—the headlights and hazard lights had been turned off and whoever was in the vehicle had departed the scene. TT at 10:2-11:5.

Officer Szulwach testified that he patrolled that area of the parkway at least every hour and he had not encountered the vehicle during his previous drive-by. TT at 38:15-17. Officer Szulwach also testified that he had investigated hundreds of car crashes and in his opinion the vehicle could not be driven, meaning it had been recently damaged. TT at 40:23-41:7. Moreover, the hood was warm to the touch, further indicating to the experienced officer that the vehicle had recently been driven. TT at 11:13-17.

Officer Szulwach then contacted the Virginia and Maryland State Police to see if there had been any reported crashes in the area given the proximity of the disabled vehicle to Interstate 495 (approximately 2.5 miles). TT at 13:12-22. No such crash was reported. *Id.* He then radioed for

3

assistance in searching the area for a motorist in need of assistance or someone that needed help.

TT at 13:20-14:6; 50:2-8. As part of the investigation—and consistent with standard police

practice—Officer Szulwach then ran the disabled vehicle's Virginia license plate (JPHUAH)

against the widely used National Crime Information Center (NCIC) database. TT at 11-12.

According to that database, the registered owner of the vehicle was Benjamin Finkhousen—the

defendant—and he had an outstanding warrant relating to a previous drunk conviction. *Id.*[1]

Officer Mace was one of the Park Police officers on duty that night and responded to the

call. TT at 49-50. Upon entering the C area parking lot of Turkey Run Park in his marked cruiser,

Officer Mace detected movement in the tree line running adjacent to the service road and made

contact with a white male in shorts and a t-shirt. TT at 50:13-20.[2]  This area was in close proximity

to where the disable Honda Civic was located. *See* Trial Exhibit 1. Upon request, this individual

supplied the officer with identification, which showed him to be the defendant. TT at 51-52.

Officer Mace asked the defendant what he was doing in the closed park at 3:00am and the

defendant informed him he was walking from Arlington to Interstate-495, a distance of

approximately 12 miles, because he "just wanted to go for a walk." TT at 52:4-9. The defendant

denied having a vehicle in the area. TT at 52:10-11.

Officer Mace informed Officer Szulwach that he had located the defendant and Officer

Szulwach walked approximately 1,000 feet from the disabled vehicle to question the defendant.

TT at 52. The defendant told Officer Szulwach that he had been hiking from Ballston in the middle

of a July night and had no explanation for why a car registered in his name was disabled a short

---

[1]  The car had Virginia license plates, tag number JPHUAH.   *See* Docket Entry (D.E.) 1-1 at 6-10.   The VIN number was 5HHFK7H93JU214076. *Id.* The outstanding, non-extradition warrant was issued out of Michigan and remains active because the defendant failed to report for jail service or pay his fine. D.E. 1-1 at 138 (PSR).

[2]  Neither Officer Mace nor any other officer encountered another person in that area during the search. TT at 51:6-8.

4

distance away. TT at 15:15-23; 16:10-19:1. Officer Szulwach proceeded to pat down the defendant

and located keys to a Honda Civic in the defendant's pocket, the same make and model of the

disabled vehicle. Officer Szulwach transported the keys to his colleague, a third officer, who was

waiting for a tow truck next to the disabled vehicle. TT at 16:17-21, 26:2-19.[3]

Officer Szulwach testified that the defendant emanated an odor of alcohol and was

unsteady on his feet. TT at 20:5-9. Field sobriety tests were conducted, beginning with the

horizontal gaze nystagmus test. TT at 21-22. The defendant indicated lack of smooth pursuit,

distinct and sustained nystagmus, and onset of nystagmus prior to 45 degrees. TT at 22-23.

Basewd upon the officer's training and experience, this is considered a failed result. *Id.* The

defendant refused to perform the remaining two tests, the walk-and-turn and the one-legged stand.

TT at 23-24. At that point, at approximately 3:25am, Officer Szulwach placed the defendant under

arrest and transported the defendant to the Park Police station, which was a short distance away.

TT at 45. There, Officer Szulwach notified the defendant via Park Police Form 21C ("Chemical

Testing Notice") that he had probable cause to believe the defendant was "operating or in physical

control of a motor vehicle while under the influence of alcohol" and sought the defendant's

consent to submit to a breathalyzer test. TT at 27, 39; Trial Exhibit 2. The defendant voluntarily

granted written consent to the breath test. *Id.* The chemical breath test results showed 0.137 and

0.131 grams of ethanol per 210 liters of breath, well in excess of the legal limit. TT at 31:21; Trial

Exhibit 3. The test results came back at 4:07 a.m. and 4:11 a.m., approximately one hour and ten

minutes after the disabled vehicle was first sighted. Trial Exhibit 3; TT at 61, 65.

The defendant was then issued citations for Leaving the Scene of an Accident; Violating

Park Closure regulations; Driving Without an Operator's License, Driving While Intoxicated, and

---

[3] The third officer did not testify at trial.

Driving Under the Influence and court proceedings commenced. DE 1-1 at 6-10.

On September 10, 2018, the defendant moved to suppress the breath test results for lack of probable cause. DE 1-1 at 33-38. The government filed its opposition on September 18, 2018. *Id.* at 39-49. The trial was conducted on September 25, 2018. The Court denied the motion to suppress and granted the defendant's motion to dismiss the leaving the scene, violating park closure, and driving without an operator's license counts. *Id.* at 4. The Court ruled that the government had proved DWI under 36 C.F.R. § 4.23(a)(2) and DUI under § 4.23(a)(1). TT 65:17-66:5. Given that this District treats DUI and DWI violations as one offense, provable in two ways, the Court found the defendant guilty of the DWI charge and dismissed the DUI charge. *Id.* A Presentence Report was prepared documenting defendant's lengthy history of DUI convictions and other alcohol related conduct. *Id.* Defendant was sentenced on November 20, 2018 and this appeal followed.

## ARGUMENT[4]

As described above, defendant was convicted under 36 C.F.R. § 4.32(a) and this appeal challenges probable cause, testimony as to the contents of a NCIC report, and the sufficiency of the evidence. Section 4.23(a) states that "operating or being in actual physical control of a motor vehicle is prohibited while: … (1) under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation; or (2) the alcohol concentration in the operator's blood or breath is .08 grams or more of alcohol per 100 milliliters of blood or .08 grams or more of alcohol per 210 liters of breath." The regulation does not require the accused to have been driving a car in order to be convicted and does not have a *mens rea* requirement. *United States v. McFarland*, 2006 WL 932569, at *1 (1st Cir. 2006).

---

[4] The Standard of Review for each of the three arguments raised on appeal is discussed at the outset of each respective section of the Argument.

## I.        Probable Cause for the Breath Test Existed

### A.  Standard of Review

A trial court's probable cause determinations are reviewed de novo although its underlying

factual determinations are reviewed for clear error. *United States v. Allen*, 631 F.3d 164, 171 (4th

Cir. 2011); *United States v. Herder*, 594 F.3d 352, 363 (4th Cir. 2010). Probable cause is

determined by a "totality of the circumstances approach."   *Illinois v. Gates*, 462 U.S. 213, 230

(1983). "Probable cause is a flexible, common-sense standard," requiring only that the "facts

available to the officer would warrant a man of reasonable caution in the belief" that the suspect

has committed a crime. *Texas v. Brown*, 460 U.S. 730, 742 (1983). The probable cause standard is

intended to protect "citizens from rash and unreasonable interferences with privacy and from

unfounded charges of crime," while at the same time giving "fair leeway for enforcing the law in

the community's protection." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003), quoting *Brinegar v.*

*United States*, 338 U.S. 160, 176 (1949). Under the "collective-knowledge" doctrine, courts

consider not only the first-hand observations of the police officer actually making the stop, but also

facts known to other agents and transmitted to the officer. *United States v. Massenburg*, 654 F.3d

480, 492 (4th Cir. 2011).

### B.      The Defendant was Inebriated a Short Distance From a Disabled Vehicle Registered in His Name

When the defendant was arrested, there was ample cause to believe that he had been

driving while intoxicated. He was found visibly and fragrantly intoxicated in a park that had been

closed for five hours. He was in close proximity to a recently damaged Honda Civic vehicle

registered in his name. He had an outstanding warrant relating to a previous DUI conviction. The

defendant had keys to a Honda Civic in his pocket. The vehicle's hazard and head lights had

recently been turned off as a marked police cruiser approached. A search of the surrounding area

did not locate any other persons. The defendant failed field a sobriety test and informed the officers

that he was in the midst of a 12 mile hike from Ballston to Interstate 495 in the middle of the night.

The defendant never explained what he was going to do when he reached the Interstate, on foot.

Moreover, the defendant's assertion that Officer Szulwach never asked Mr. Finkhousen if

he had been driving that night, *see* Def. Mot. at 10, is simply wrong (and irrelevant in light of the

totality of the evidence). The officers asked several questions of the defendant, including asking

him to explain his presence in the park and whether he had been driving. The Court found the

defendant's answers "incredible." TT at 63. It is well-established that a finder of fact can consider

preposterous explanations as evidence of consciousness of guilt. *See Wright v. West*, 505 U.S. 277,

295-96 (1972) (explaining that a defendant's contradictory, vague, and evasive answers contribute

to a finding of guilt); *United States v. Burgos*, 94 F.3d 849, 867 (4th Cir. 1996) (defendant's

contradictory, vague and evasive answers contribute to a finding of guilt); *United States v. Colbert*,

261 Fed. Appx. 466, 470 (4th Cir. 2008) (inability of a defendant to credibly explain why his

wallet was found amongst counterfeit bills constitutes "significant" evidence of the defendant's

guilt); *United States v. Ortiz*, 669 F.3d 439, 445 (4th Cir. 2012) (finding that a defendant's

"uncertainty and confusion about his destination" supported a finding that probable cause existed

to search his car for contraband); *United States v. Smith*, 680 F.2d 255, 260 (1st Cir. 1982)

("Smith's innocent hitchhiking story is inherently unbelievable and we perceive of no more reason

for being taken in by it than was the jury."); *Springston v. State of Arkansas*, 962 S.W.2d 836 (Ark.

Ct. App. 1998) (upholding DUI conviction where defendant was found three-quarters of a mile

away form an accident involving a car registered in his name and gave improbable explanation for

what he was doing in the area; "A jury may consider and give weight to any false and improbable statements made by an accused in explaining suspicious circumstances.").

The defendant also asserts that Officer Szulwach never testified that the defendant was the registered owner of the damaged Honda Civic. *See* Def. Mot. at 4. That is also wrong. TT at 11:18-22 ("So I walked back to my car and I did an NCIC check of the license plates to see if maybe it was stolen or if it had been reported in a crash. And there was nothing reported. But then I saw that the registered owner of the vehicle had an outstanding warrant for a DUI."); 18 ("So at the time that you did your initial investigation, you learned the name of the person who, according to the NCIC records, who the car was registered to? Yes."); 18:24-19:1 ("How did the defendant respond to the question about how a car registered in his name was found nearby? He said he didn't know.").

Moreover, if the defendant's argument is correct, the consequences would be utterly absurd. It would mean that unless the police physically observe a suspect operating a car, they would be required to simply leave an inebriated individual with an outstanding warrant unattended after finding the individual hiding in a tree line in a close park all the time knowing that a vehicle registered in the defendant's name was nearby, had recently been involved in an accident, and that the defendant had keys to the same make of car in his pocket.

A similar argument was made, and soundly rejected by the Fourth Circuit over fifty years ago. In *Sewell v. United States*, 243 F.2d 909 (4th Cir. 1957), the defendant was accused of unlawful distilling and was found "in the woods on an October afternoon," and was "redolent of the fumes of intoxicating liquor … within a few hundred yards of a hidden distilling apparatus of substantial size, which the agents had previously discovered, and quite near were two automobiles

concealed in the woods, of the kind suitable for … carrying the finished product away." *Id.* at 911.

Mr. Sewell, the defendant, "told the agents an incredible story as to how he came to the place and

gave no explanation whatever as to why he was there." *Id.* In *Seawell*, the Court concluded that "…

if the agents had not taken the man into custody they would have been censurable for negligence of

duty" and found that the arrest and search of the defendant was justified by probable cause,

recognizing that "cumulative circumstances furnished a substantial basis for the finding of guilty."

*Id.* Here, the similar cumulative circumstances indicate that not only did the arresting officer have

probable cause, but that had he not taken the defendant into custody, he would have arguably been

"censurable for negligence of duty."[5]

## II. THE COURT'S RULING ALLOWING THE OFFICER TO TESTIFY AS TO HIS INVESTIGATION AND CONSULTATION OF THE NCIC DATABASE TO OBTAIN INFORMATION ABOUT THE OWNERSHIP OF THE VEHICLE WAS NOT AN ABUSE OF DISCRETION

Defendant's second argument on appeal is that Officer Szulwach should not have been

permitted to testify that he ran the disabled vehicle's license plate through the NCIC database and

that, according to that database, the disabled vehicle was registered to the defendant. Mot. at

11-12. A trial court's evidentiary rulings are reviewed for abuse of discretion. *See, e.g., United*

*States v. Robinson*, 275 F.3d 371, 383 (4th Cir.2001); *Rowland v. Am. Gen. Fin., Inc.,* 340 F.3d

187, 194 (4th Cir. 2003) ("We review a district court's evidentiary rulings for abuse of

---

[5] The probable cause appeal can also be summarily dismissed because the defendant consented to a breathalyzer test after being read his *Miranda* rights and presented with a notice of consent. TT at 28:1-11. "Absent a showing of involuntariness or exploitive, unconstitutional conduct, a criminal defendant has no basis to suppress evidence found during a consent search." *Ellis v. Commonwealth*, 662 S.E.2d 640, 643 (Va. Ct. App. 2008). In *Birchfield v. North Dakota*, 136 S. Ct. 2160, the Supreme Court expressly distinguished between warrantless breath and blood tests incident to arrests for drunk driving. The Court held that the privacy interests in warrantless breath tests are minimal and the need for such testing is great. *Id.* at 2183-85 ("Because breath tests are significantly less intrusive than blood test and in most cases amply serve law enforcement interests, we conclude that a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving. As in all cases involving reasonable searches incident to arrest, a warrant is not needed in this situation.").

discretion.").

Far from an abuse of discretion, the trial court's ruling was consistent with settled Fourth

Circuit law. In *United States v. McDowell*, the Fourth Circuit held that "[t]he pervasive use of

NCIC reports throughout the criminal justice system further indicates that such reports may be

trusted." 745 F.3d 115, 121-22 (4th Cir. 2014). "Courts use NCIC reports to make bail and pretrial

release decisions; prosecutors rely on NCIC reports at trial to prove that witnesses committed a

relevant prior crime; and probation officers use NCIC reports to establish defendants' criminal

histories at sentencing." *Id.* (additional citations omitted); *see also United States v. Brown*, 618 F.

App'x 743, 745 (4th Cir. 2015) (upholding conviction based in part on NCIC data; "[The

defendant] argues that because the NCIC database is known to be frequently incorrect, Morrison

should not have relied on its information. To the contrary, however, this court has concluded that

the NCIC database generally is accurate that the widespread use of its reports indicates they may

be trusted … Further, [the officer] did not rely solely on NCIC information in concluding that [the

defendant's] arrest warrant was valid."); *United States v. Johnson*, 14 F.3d 597 (4th Cir. 1994) ("In

this case, it is clear that Cloud possessed probable cause to believe that evidence of criminal

activity was contained in the glove compartment. The NCIC had confirmed that the dealer tag on

the vehicle-which only authorized dealers are permitted to issue-was stolen. ... Common sense tells

us that the registration information was evidence of not only that the dealer tag was stolen, but that

the vehicle was stolen as well.").[6]

If anything, the defendant's objection to this testimony goes to the weight that should be

---

[6] The NCIC search also revealed the existence of the outstanding warrant. *United States v. Hill*, 852 F.3d 377, 379 (4th Cir. 2017) ("[A]n officer reasonably may search a computer database during a traffic stop to determine an individual's prior contact with local law enforcement, just as an officer may engage in the indisputably proper action of searching computer databases for an individual's outstanding warrants.").

accorded the registration and outstanding warrant, not its admissibility. TT at 12. The reports were produced in discovery. The defendant chose not to challenge their reliability or the fact that the report identified the defendant as the registered owner of the vehicle.[7] *Accord United States v. Madrid–Flores,* 129 Fed. Appx. 401, 402 (10th Cir. 2005) (finding testimony of a probation officer that a records check had been performed based on NCIC fingerprint comparisons was sufficiently reliable evidence when defendant did not present any evidence to the contrary). Moreover, the conviction did not rely solely on the testimony that the NCIC database was registered to the defendant. As described above, a voluminous amount of evidence was presented that could permit a reasonable finder of fact to conclude that the defendant had been operating or in physical control of the vehicle while intoxicated.

### III.   THE GOVERNMENT'S EVIDENCE WAS MORE THAN SUFFICIENT TO SUPPORT A DRIVING WHILE INTOXICATED VERDICT

#### A.  *Standard of Review*

"An appellate review conducted by a district court after a bench trial before a magistrate judge is not a trial de novo; rather, the district court utilizes the standards of review applied by a court of appeals in assessing a district court conviction." *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005); *see also* Fed. R. Crim. P. 58(g)(2)(D). In assessing the sufficiency of the evidence presented in a bench trial, a reviewing court must uphold a judgment of guilt "if, taking the view most favorable to the Government, there is substantial evidence to support the verdict." *United States v. Armel*, 585 F.3d 182, 184 (4th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id*. A

---

[7] Although not at issue in the trial, it should be noted that the defendant listed the automobile as an asset in providing information about his finances to the probation office. *See* Docket Entry 1-1 at 144 (PSR).

defendant challenging evidentiary sufficiency "bears a heavy burden," as reversal of a conviction is limited to "the rare case where the prosecution's failure is clear." *United States v. Ashley*, 606 F.3d 135, 138 (4th Cir. 2010) (internal quotation marks omitted); *Wright v. West*, 505 U.S. 277 (1992).

### B.  *The Government Presented Substantial Evidence that the Defendant was Operating or Controlling the Vehicle While Intoxicated*

The crux of the challenge to the sufficiency of the verdict is that the government did not adduce sufficient evidence to allow a finder of fact to reach the conclusion that the defendant had either been "operating" or "in actual physical control" of the motor vehicle, in violation of 36 C.F.R. § 4.23(a) because he was not found in the vehicle.[8] Mot. at 12-14. There are multiple flaws in this argument.

*First*, it is well-established that a criminal need not be caught with his hand in the proverbial cookie jar to be convicted.[9] Appellate courts routinely uphold verdicts based on circumstantial evidence.[10]

---

[8] The defendant asserts that the court found the defendant had been "driving" the vehicle. Mot. at 12. But "driving" is not a statutory phrase and the cited portions of the transcript largely reflects dialogue between the Court and counsel. The defendant was charged with violating 36 C.F.R. 4.23(a)(2), which prohibits "operating" or being in "actual physical control" of a motor vehicle while intoxicated and evidence as to either is sufficient to uphold the verdict.

[9] *See United States v. Lane*, 591 F.3d 921, 926-27 (7th Cir. 2010) ("Lane argues that the government failed to show any evidence that he possessed the cocaine. But the police were not required to catch Lane with his hand in the cookie jar."); *United States v. Starks*, 309 F.3d 1017, 1022 (7th Cir. 2002) ("A defendant need not be caught red-handed in order to satisfy the possession element…The government only needed to prove constructive possession, which can be established through circumstantial evidence and exists where the evidence demonstrates ownership, dominion, authority, or control."); *Springston v. State*, 962 S.W.2d 836, 839 (Ark. Ct. App. 1998) ("[T]he statute does not require law enforcement officers to actually witness an intoxicated person driving or exercising control of a vehicle … It is well-settled that the State may prove by circumstantial evidence that a person operated or was in actual physical control of a vehicle.").

[10] *See, e.g. United States v. Wilmer*, 799 F.2d 495, 502 (9th Cir. 1986) ("Circumstantial evidence permits a legitimate inference … that the defendant was in actual physical control."); *United States v. Thurston*, 771 F.2d 449, 452 (10th Cir.1985) (in reviewing the sufficiency of the evidence, "circumstantial evidence is entitled to the same weight as that given to direct evidence"); *United States v. Mirelez*, 52 Fed. Appx. 106, 107-8 (10th Cir. 2002) (defendant contends "inferences which led the jury [to convict] were drawn from circumstantial evidence … However a DUI conviction may be sustained solely through circumstantial evidence … If a reasonable trier of fact could find

13

*Second*, contrary to the defendant's suggestion, there is a substantial body of case law upholding DWI verdicts under similar circumstances. For example, in *Springston v. State of Arkansas*, the defendant was found three-quarters of a mile from an accident scene involving a car registered to the defendant and asserted that someone else had been driving the car although the police had not located any other potential drivers in the area after a search. 962 S.W.2d 836 (Ark. Ct. App. 1998). The appellate court upheld the jury verdict, noting that "[a] jury my consider and give weight to any false and improbable statements made by an accused in explaining suspicious circumstances.".

Similarly, in *State v. Bryan*, the Court of Criminal Appeals of Tennessee upheld a DUI conviction based on circumstantial evidence that the defendant, another serial DUI offender, had been operating the car. No. M2003-01366-CCA-R3-CD, 2004 WL 1533828 (Tenn. Ct. Crim. App. July 7, 2004). The court placed emphasis on the fact that the automobile in question was located at an intersection of two public roads, allowing the finder of fact to draw an inference "that it had been driven immediately prior to the arrival of officers on the scene." *Id.* at *3. This differentiated the situation from other cases where automobiles were found in parking lots. No one else but the defendant was found in proximity to the car and no one appeared during the nearly one hour officers were on the scene:

> In the absence of any credible proof that this driving might have been done by someone else, it was reasonable for the jury to infer that it was done by the Appellant…Obviously the truck was driven to the intersection in a functional condition, and the Appellant appeared to be the only person in close proximity.

---

defendant guilty based on the evidence and the inferences it could draw from that evidence, we cannot reverse a conviction based on insufficiency of evidence. The jury in this case simply found the prosecution's version of the case more compelling than defendant's version. We cannot disturb that determination."); *Trostle v. Michigan*, No. 1:07-cv-219, 2010 WL 458907, at *13 (W.D. Mich. Feb. 3, 2010) (circumstantial evidence supported verdict that petitioner was driving under the influence where petitioner fled the scene, had keys of the same make and model car in his pocket, was hiding in the bushes, and claimed someone else was hiding in the bushes but no one else was found nearby).

> After review of the record, we conclude that the evidence was legally sufficient to support a conviction for DUI under either theory that the Appellant was driving or in physical control of the vehicle.

*Id.* at *4.[11]

Here, the Honda Civic was obviously driven to the side of the GW Parkway in functional condition—vehicles do not merely appear in that location. The defendant was the only person found in close proximity to the vehicle. The vehicle was registered in the defendant's name and keys to the same make of car were located in the defendant's pocket.[12] *See also State v. Ward*, 660 P.2d 957 (Kan. 1983) ("A conviction of driving under the influence of intoxicating liquor … may be sustained although based solely on circumstantial evidence."); *Vaughn v. State,* No. 05–05–1313–CR, 2006 WL 1985968) (Tex. Crim. App. July 18, 2006) (evidence was sufficient to support a conviction for driving while intoxicated where no keys were found in the ignition and no witness saw the appellant driving the car); *Sheldon v. State,* No. 06–08–0005–CR, 2008 WL 2388687 (Tex. Crim. App. June 13, 2008) (circumstantial evidence that appellant had been driving the car held sufficient to support the conviction for driving while intoxicated); *State of Minnesota v. Clark*, A16-1712, 2017 WL 3974301 (Minn. Ct. App. Sept. 11, 2017) (upholding conviction where the defendant was observed over 100 yards from a vehicle in a ditch off the side of the road.)

*Fourth*, the warm hood constitutes evidence that the car had recently been driven to the location where the officer sighted it—that it had been operated and/or under someone's physical control. *See United States v. Baylor*, 537 Fed. Appx. 149, 154 (4th Cir. 2013) ("She [the officer] knew the vehicle had been recently driven due to the SUV's warm hood."); *Hollins v. United*

---

[11] In *Bryan*, the state did not introduce proof of ownership. *Id.* at *4, n.4.

[12] Although not necessary to support a conviction, when taking the view most favorable to the government as is the case here, a finder of fact could have reasonably inferred that the keys in the defendant's pockets were the keys to the nearby vehicle registered in his name, especially in light of the defendant's incredible statements purporting to explain his purpose for being at the location.

*States*, 338 F.2d 227, 229 (9th Cir. 1964) ("The officer then had good reason to believe that the automobile in the driveway had been recently driven since the hood was still warm."); *United States v. Scott*, 520 F.2d 697 (9th Cir. 1975) ("The hood was warm to the touch indicating that the car had recently been driven."); *United States v. Stephens*, 19 Fed. Appx. 257 (6th Cir. Aug. 30, 2001) ("There was a car in front of the house with a warm hood, indicating it had been recently driven ....").[13]

*Fifth*, as noted above, it was perfectly reasonable for the finder of fact to take into consideration both the preposterous explanation the defendant provided for his presence in the park, *see supra* at § II(B), and the fact that that he was found hiding in the tree line only a few minutes after the engine and the lights to a damaged car were turned off as a marked police cruiser approached the scene. *United States v. Obi*, 239 F.3d 662, 665 (4th Cir. 2001) (Consciousness of guilt may be deduced from evidence of flight and a guilty verdict may be supported by consciousness of guilt); *United States v. Henley*, 386 F. App'x 370, 376 (4th Cir. 2010) (same). Considering the totality of the evidence, and "taking the view most favorable to the government," there was more than sufficient evidence to support a finding that the defendant was operating or in physical control of the vehicle.

    C.   *The Breathalyzer Test Occurred Approximately One Hour and Ten Minutes After the Disabled Vehicle was First Sighted*

The defendant also challenges the verdict based on the duration of time between sighting the vehicle and conducting the breathalyzer test, raising the theoretical possibility that the

---

[13] *See also United States v. Word*, IP 99-106-CR, 2000 WL 724041 (S.D. Ind. May 31, 2000) ("[T]he police felt the hood of Dickerson's car and found it was still warm, indicating that it had been driven recently."); *United States v. Calhoun*, 3:16-CR-92, 2017 WL 1078634 (D. Conn. March 21, 2017) ("[A]n officer confirmed that the hood of the car was warm, indicating that the car had recently been driven."); *Gonzales v. Cain*, Civ. A. 14-2448, 2015 WL 7017058 (E.D. La. Nov. 10, 2015) ("The hood was warm, indicating that the vehicle had been driven recently."); *McCullough v. Uwchlan Tp.*, Civ. A. 91-2071, 1991 WL 153078 (E.D. Pa. Aug. 2, 1991) ("The car's hood was warm indicating that it had just been driven.").

defendant could have consumed the alcohol that resulted in his .13 test after he ceased operating of being in physical control of the car. *See* Def. Mot. at 14-15. Specifically, the defendant relies on *United States v. Wight*, 884 F. Supp. 400, 401 (D. Colo. 1995), to argue that a two hour period between operating or being in control of the vehicle and a breath test is too long under 4.23(a). *Id.* This argument also fails.[14]

Officer Szulwach testified that he encountered the vehicle at approximately 3:00 a.m. He also testified that he patrolled the area every hour and had not encountered the vehicle during his previous patrol. TT at 38:15-17. The breathalyzer test occurred at 4:07 a.m., approximately one hour and seven minutes after the defendant's vehicle was sighted and the defendant registered a BAC of .13. Trial Exhibit 3. The legal limit is .08. 36 C.F.R. § 4.23(a).

To be sure, defendant argued at trial it was theoretically possible the defendant's vehicle could have been stopped on the side of the GW Parkway since 2:00 a.m. and the defendant could have become intoxicated during that time. TT at 42-43, 45; Def. Mot. at 14-15.[15] But this case is now on appeal and, as explained above, the hood was warm to the touch, indicating it had recently been driven and the headlights and hazard lights were turned off as Officer Szulwach approached the car. *See supra* Factual Background, § III(B); *see also Harris v. Commonwealth*, 2002 WL 1419890, at *2 (Va. Ct. App. July 2, 2002) ("That Harris was operating his car without a license in the presence of Officer Linger is further supported by his operation of the car's hazard lights."), citing *Williams v. City of Petersburg*, 216 Va. 297, 300, 217 S.E.2d 893, 896 (1975) ("'Driving an

---

[14]  As an initial matter, as the government was examining the witness who conducted the breathalyzer test at trial, defense counsel stated "that he had no objection to the results other that what's been in the motion to suppress." TT at 30:7-9. It is clear from the timing and context that defendant was referencing the results of the breathalyzer test and the questioning. Dhe defendant did not raise this issue in his motion to suppress or Rule 29 motion, both of which were based on the "operator or actual physical control" issue. D.E. 1-1 at 33-39 (Motion to Suppress); 56-58 (Motion for Judgment of Acquittal).

[15]  The defendant did not introduce any evidence to support the hypothetical.

automobile means putting it in motion but [] 'operating' has a broader meaning … [Operating] also includes starting the engine or manipulating the mechanical or electrical equipment of the vehicle without actually putting the car in motion."). Construing the evidence in the light most favorable to the government, the vehicle had been operated or under the physical control of the defendant up until the time Officer Szulwach sighted it at 3:00 a.m. *See also State v. Martinez*, 45 F.3d 41 (N.M. Ct. App. 2002) (upholding DWI verdict based on inferences drawn from a BAC test administered 1.5 hours after the vehicle was driven and listing other cases with similar findings)

Even if one assumes *arguendo* that defendant's hypothetical 2:00 a.m. stoppage time was correct, it would only result in a two hour and seven minute time period before the breath test and the Fourth Circuit has expressly declined to hold that 4.32(a) sets an explicit time period for testing blood alcohol content and declined to endorse the reasoning in *Wight*. *See United States v. Smith*, 701 F.3d 1002, 1009- 1011 (4th Cir. 2012) ("Unlike some comparable state statutes, § 4.23(a)(2) sets no explicit time limit for the taking of a blood alcohol test that may be used at trial to show a defendant's alcohol concentration."). In a decision before *Smith* was decided, a Maryland District Court concluded that under section 4.23(a) "a reasonable period of time will ordinarily be a test administered within three hours of the time of driving." *United States v. Sauls*, 981 F. Supp. 909, 926 (D. Md. 1997).

Any individual suspected of an alcohol related driving offense will be queried by the investigative officer and likely requested to perform a number of field sobriety tests, all of which take time. *United States v. Sauls*, 981 F. Supp. 909, 926 (D. Md. 1997). If intoxication is suspected, an officer will have to transport the defendant to the nearest testing facility and then observe the individual for twenty minutes prior to administering the test. *See, e.g.* TT at 29-30 (describing the

observation period). Investigating officers should not be forced to decide between being accused of making snap judgments on the scene and racing defendants to testing facilities or foregoing the ability to obtain drunk driving convictions.

The overly restrictive durational limitation advocated by the defendant would also incentivize repeat offenders familiar with the contours of this area of the law—such as this defendant—to vacate a vehicle and remain in hiding for as long as possible after an accident. This would allow them to both run out the clock on the admissibility of the test itself and enhance their hypothetical "I could have gotten drunk after I left the car" argument.

Lastly, the officers testified that no alcoholic substance was found in or around the vehicle or the park, TT at 15:12-14, 37-38; 61:22-25, and the defendant did not introduce any evidence that he had consumed alcohol after exiting the vehicle. As aptly explained by the Texas Court of Criminal Appeals in upholding a DWI verdict based on circumstantial evidence against a hypothetical argument that the illegal substances could have been consumed after the defendant had ceased operating the car: "[N]o one could say with definiteness that she did not sit in the car in the middle of the road and proceed to get high on drugs… However, neither we nor the jury are constrained from looking at circumstantial evidence as evidence of guilt." *Sheldon v. State*, 2008 WL 238867, at *3 (Tex. Crim. App. 2008). It was a "logical step" for the jury to find the defendant was operating the vehicle to the place where it was found and it was reasonable "not to consider the possibility that some unidentified person drove it there and then wandered off, never to return." *Id.* "The jury need not rule out a possibility that the car was constructed on site, fell off the back of a tow truck, was left behind by a band of roving gypsies, or was blown there by a strong wind." *Id.*; *see also State of Minnesota v. Toscano*, A17-0871, 2018 WL 945023 (Minn. Ct. App. Feb. 20,

19

2018) (upholding DUI verdict based on circumstantial evidence where defendant argued he could

have used a controlled substance after the vehicle broke down. "[T]he absence of any drug

paraphernalia makes it highly unlikely that Toscana used drugs after the breakdown.").

## CONCLUSION

For the reasons set forth herein, the appeal should be denied in its entirety.


Respectfully submitted,

G. Zachary Terwilliger
United States Attorney


_____/s/_____
Andrew Dober
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia   22314
Phone: (703) 299-3875
Email: andrew.dober@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of January, 2019, I electronically filed the foregoing

document with the Clerk of Court using the CM/ECF system, which will send a notification of

such filing (NEF) to all counsel of record.


/s/
_____
Andrew Dober
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3875
Email: andrew.dober@usdoj.gov